UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 OCT -5  A 9: 37

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     Civ. No. 3:05CV1220(AHN) |
| v. | :     [Crim. No. 3:02CR91(AHN)] |
| | : |
| MICHAEL MORIARTY | : |
| | :     October 4, 2005 |

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S
MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

Michael Moriarty, the petitioner/defendant, responding to the government's memorandum in opposition to his motion for relief under 28 U.S.C. § 2255, has supplemented his initial submission with a memorandum dated August 1, 2005. The government provides this response, including the attached affidavits of the defendant's prior counsel and of Sergeant Murphy, to supplement the analysis outlined in the government's previous memorandum.

A. Evidentiary Hearing

It is respectfully submitted that no evidentiary hearing is warranted in this case. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001), the Second Circuit made clear that a District Court may appropriately rule on a section 2255 motion without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, renders a testimonial hearing unnecessary. 250 F.3d at 85-86.

As the Supreme Court noted, even where a "hearing" of some kind is warranted, that does

not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Machibroda v. United States, 368 U.S. 487, 495 (1962). Indeed Section 2255 itself provides that a "court may entertain and determine [a Section 2255] motion without requiring the production of the prisoner at the hearing." See also Stokes v. United States, 2001 WL 29997 at *2 (S.D.N.Y. January 9, 2001) (district court may rely on its own familiarity with the case and deny the motion without a hearing where the court concludes that the motion lacks "meritorious allegations that can be established by competent evidence")(citing United States v. Aiello, 900 F.2d 528, 534 (2d Cir.1990)). Indeed, the Court may decide the petition without a hearing if it finds that there is "overwhelming evidence of [petitioner's] guilt." United States v. Aiello, 900 F.2d at 534.

As one court has held in language appropriate to consideration of the instant motion:

> Here movant... has not proffered *any* evidence other than his own self-interested and conclusory statements to support his claims. The evidence he does offer is an insufficient basis on which relief may be granted.

Amunthaiyakul v. United States, 1990 WL 17724 at *1 (S.D.N.Y. Feb. 20, 1990), aff'd, 923 F.2d 845 (2d Cir. 1990), cert. denied, 502 U.S. 837 (1991). Finally, whether or not to hold a hearing is entrusted to the sound discretion of the district court. See Chang v. United States, 250 F.3d 79, 82 (2d Cir. 2001); United States v. Stantini, 85 F.3d 9, 17 (2d Cir. 1996); United States v. Russo, 801 F.2d 604, 607 (2d Cir. 1986); Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977). Here, of course, this Court presided over the trial and is fully familiar with the

record.

As is discussed further below, each of the defendant's allegations should be addressed without a hearing. In some instances and as particularly discussed in the government's previous submission, the defendant's claim is made so broadly that it lacks the factual specificity that would support a vacatur of the conviction. In other instances, the materials submitted by the government as part of the record will supply the necessary basis for the Court's decision. In any event, no hearing is warranted.

B. Allegations of Constitutionally Ineffective Assistance of Counsel Pretrial.

1. Alleged Failure to Conduct Independent Investigation of Certain Alleged Alibi Witnesses

a. The Law Regarding Failure to Raise/Investigate a Defense

To raise a claim that defense counsel has failed to raise or investigate a defense, a defendant need establish that his counsel's representation both fell below the constitutionally recognized level of reasonableness and that, if counsel was not competent, such alleged incompetence resulted in such prejudice that there is a reasonable probability that the verdict may have differed. See, e.g., Greiner v. Wells, 417 F.3d 305, 318-319 (2d Cir. 2005). Counsel may reasonably choose not to investigate if it appears that such investigation may be fruitless or harmful to the defendant's case. Id.; United States v. Olson, 846 F.2d 1103, 1108-1109 (7th Cir. 1988). None of the cases cited by the defendant take issue with the Strickland standard. See United States v. Johnson, 582 F.2d 1186 (8th Cir. 1978) (reaffirming the need to show incompetent counsel *and* prejudice, noting that at a threshold level the defendant must make

3

specific allegations, which the defendant had not).[1]  As relevant here, where the defendant has offered no independent, credible evidence (testimony, affidavits, letters, etc.) that others would put him at a different place during the time of the bank robbery, the defendant fails to establish he was prejudiced by counsel's alleged decision not to pursue an alibi defense. See, e.g., Olson, supra at 1109; Cf. In re Goff, 250 F.3d 273, 276 (5th Cir. 2001).

b.  The Defendant's Present Claim

The defendant now claims that there were five persons who could have placed the defendant elsewhere at the time of the robbery. Down from the alleged eight alibi witnesses he claimed existed in his first submission, the defendant still does not identify these persons by name, much less provide contact information, even though one purportedly was his best friend at the time. Nor does the defendant provide any letters, affidavits or other information from these alleged witnesses or proffer with any specificity what those witnesses could recall regarding the defendant's whereabouts during the five or so minutes the robbery took place over seven years ago, particularly when three years ago at trial the defendant *himself* admitted not to be definitely sure of where he was on the day of the robbery. GA 246 (acknowledging only to have a "best guess" as to his whereabouts); Moriarty Excerpt (attached) ("I recall Kip dropping me off

---

[1] See also Brown v. Meyers, 137 F.3d 1154 (9th Cir. 1998) (focusing on prejudice prong after incompetence established, finding that testimony of potential witnesses established key evidence that reasonably probably affected outcome); Foster v. Lockhart, 9 F.3d 722 (8th Cir. 1993) (attorney had no reasonable justification for failing to investigate impotency defense in rape case and uncontradicted testimony of expert in habeas action suggested prejudice where the defendant was likely medically incapable of committing crime); Holsenback v. White, 133 F.3d 1382 (11th Cir. 1998) (no good justification for failing to investigate potential for medical expert testimony when reasonably probable that such testimony would exonerate the defendant); United States v. Gray, 878 F.2d 702 (3rd Cir. 1989) (setting out two prong standard).

4

somewhere. Whether it was Scruples, I can't be 100 percent certain . . . .). Yet the defendant now insists, having refined his position since trial, that he was at Scruples during the robbery. He also more generally claims to have gotten to know the manager and the bar staff and that his best friend met him every weekday between 4 and 5 p.m. and remained at the bar until closing. He thereby suggests that it was not possible for him to have been at the robbery that took place between 4 and 5 p.m. on January 13, 1998.

### c. The Defendant Fails to Meet Either Strickland Prong

#### i. Counsel Acted within Reasonable Standards

The defendant's newly expanded alibi fails to raise a colorable claim under Strickland. As a threshold matter, the defendant cannot establish that his counsel was constitutionally deficient in choosing not to pursue the purported alibi defense.

First, defense counsel did as general matter investigate the case by contacting the government, obtaining discovery in the case, as well as requesting and receiving a range of other evidence not ultimately used by the government at trial. Hopkins Aff. ¶ 3. As to information not readily provided by the government, such as investigators' rough notes of finalized reports, counsel sought and then moved for their production and obtained such notes. During trial preparation, defense counsel also pressed the defendant for information regarding others potentially involved in the crime and discussed in detail the defendant's proffered explanation of his whereabouts during the crime. Id. ¶ 4. Defense counsel acknowledges that this defendant, like many defendants counsel has represented, initially discussed raising some type of alibi defense at their first meeting. Id. However, defense counsel pressed the defendant as to why the

5

defendant could reasonablely remember being at a particular location on a particular date years ago, much less recall being at the location during the exact time of the attempted robbery. Id. The defendant offered no explanation and conceded as much. Id.

While counsel and the defendant discussed that a bartender might generally recall knowing the defendant, the defendant offered no reason why anyone, including a bartender, might recall dates and times so long ago with sufficient detail as to offer any plausible defense. Id. Further, the defendant did *not* mention in discussion, much less emphasize his current story that everyday he met his best friend at the bar between 4 and 5 pm, the very time the robbery took place, strongly suggesting that this new claim is fabricated. Id.

Second, the defendant and his counsel, because of tactical concerns that an easily impeached alibi could well hurt the defendant's case far more than help it, decided not to pursue such a defense, and so represented to the Court. Hopkins Aff. ¶ 6. Defense counsel, who had extensive previous trial experience, knew that a general claim that the defendant was drinking in a strip club and extremely upset and/or depressed around the time of his divorce would, if anything, give the government additional reasons why the defendant would have engaged in the reckless, self-destructive act of attempting to rob a bank. Id. ¶ 7.

Third, as discussed in the previous memorandum, the defendant's own actions before and even during trial belie his newly detailed alibi claim. The defendant, who at other times had no problem voicing displeasure, did not raise issue with the Court regarding the trial strategy of not pursuing an alibi defense. Nor did the defendant suggest to the Court that he wanted to pursue such a defense when the government, pretrial, expressly explained that by forgoing such a

6

defense the defendant should be precluded from arguing he was at a specific bar during the time of the robbery. Nor did the defendant at anytime prior to or during trial identify a list of persons who could corroborate his being anywhere specific during the time of the robbery. In particular, the defendant did not mention to the government, to the Court or even to his attorney some unnamed best friend who he was allegedly drinking with each day between 4 and 5 p.m. – namely during the time of the robbery. Instead, as the trial record makes clear, the defendant decided to run with the alibi argument when he was on the stand, an impetuous and transparent effort to sway the jury at the end of the trial when timing would make it difficult for the government to investigate and rebut the specifics of the claim.

Under all these circumstances, defense counsel acted well within the range of reasonable representation by discussing the issue of an alibi with his client, deciding with his client not to investigate further or otherwise pursue the defense, and thus ultimately not chasing down unnamed witnesses who would be easily impeached to the detriment of the defendant's case. Again the only fair inference from the defendant's own statements and conduct prior to trial, and completely consistent with defense counsel's recollection, is that the defendant agreed with the strategy not to pursue an alibi defense.

ii. The Defendant Has Not Established Prejudice.

Even if the Court were to believe counsel should have acted differently, the defendant has not proffered any evidence to suggest that there is a reasonably probability that the trial's outcome would have been different, sufficient to undermine the Court's confidence in the verdict. First, the defendant was able to present his alibi defense to the jury in arguably the best

7

light possible – as the government had no opportunity to investigate and rebut the claim – and the jury was able to assess his demeanor and credibility. Second, the defendant has provided no letters, affidavits, or other evidence to suggest the purported witnesses he would now like to call would even remember him. Third, even if a witness could recall the defendant from years ago and even recall that he was going through a divorce, there is nothing in the record to suggest that these persons would recall the defendant being in a bar on any particular date and time to establish or corroborate a defense. Fourth, the possibility of prejudice is further diminished in light of the extensive evidence of the defendant's guilt in the record, including the testimony of his two coconspirators who directly implicated him in the crime. Without establishing prejudice, the defendant's claim fails under the second prong of Strickland.

2. Alleged Conflicts with Counsel

The defendant's suggestion that he had some significant conflict with counsel just prior and during trial is a new development as well. While the defendant first complained about general issues of representation, counsel talked at length with the defendant. On September 17, 2002, the parties picked a jury for the matter, at which time the Court expressly inquired of defense counsel whether he had an "adequate opportunity to spend with Mr. Moriarty." GA 3-13. Counsel indicated that he had, and the defendant agreed. Id. Hopkins had previously indicated he would be ready for trial, GA 2-3, 3-1, and the Court concurred that there was sufficient time to prepare for trial, GA 2-5 to 3-1. Defense counsel indicates that he believed that he had develop a rapport with his client by trial, and was able to intelligently discuss trial strategy and proceed accordingly. Hopkins Aff. ¶ 8. Counsel notes that he in no way intimidated or coerced the defendant, and that the defendant, as the Court is aware, was not a

personality who could be intimidated. Hopkins Aff. ¶ 8.

C. <u>Allegations of Ineffective Assistance of Counsel at Trial</u>

1. <u>Alleged Failures in Cross-examination or Closing Argument.</u>

This memorandum incorporates by reference the legal analysis outlined in the previous memorandum, which explains the tremendous latitude given defense counsel in conducting cross-examination, as cross-examination involves a range of strategic decisions made in the heat of trial. <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir. 1998); <u>Dunham v. Travis</u>, 313 F.3d 724, 732 (2d Cir. 2002). Out of hours of cross examination, the defendant points to several areas he believes warranted greater focus.

<u>First</u>, he claims that Sergeant Timothy Murphy should have been cross-examined aggressively for bias allegedly relating to the Sergeant's working on a prior murder case that allegedly involved the defendant. The defendant asserts that he had been cleared on a homicide case on which the Sergeant had worked. The defendant suggests that the Sergeant in that matter relied on unreliable witnesses and omitted evidence, arguing that the Sergeant was biased against him. The defendant asserts that this purported bias resulted in the Sergeant subsequently testifying at the robbery trial that the defendant had acknowledged some general level of participation in the robbery, although the Sergeant also explained that the defendant did not discuss the extent of his involvement.

To make his argument of purported bias, the defendant focuses on the affidavit signed by the Sergeant in the murder investigation. Of course, the defendant ignores that a state court prosecutor reviewed the relevant evidence in the case and independently signed the relevant

9

information and arrest warrant. See Murphy Affidavit (attachment). The affidavit, far from a slanted account, reads like a typical chronological outline of an investigation and includes facts that favored the defendant. Id. Nor does the history of the investigation suggest that the Sergeant pursued the matter with some deep-held vendetta. The matter was, as a practical matter, a cold case when the defendant, in custody on another matter, chose to reach out to the Sergeant and make statements that brought the case back to life. Murphy ¶ 7.

The defendant also appears to be misinformed as to why the charges were ultimately dismissed. It is the government's understanding that the murder case was ultimately dismissed when the state court concluded that the defendant could assert a marital privilege against the use of the defendant's confession at trial. Murphy Aff. ¶ 6.

Defense counsel was aware of the prior murder case and discussed the matter with the defendant. Hopkins Aff. ¶ 14. In cross-examining the Sergeant at the robbery trial and in his closing, defense counsel made the strategic judgment to suggest that the Sergeant was mistaken as to the defendant's level of involvement with the robbery, rather than to claim the detective was outright lying, although the jury could draw that inference if it wished. Hopkins Aff. ¶ 15; see, e.g., GA 295. Counsel believed that a jury would be more receptive to his suggesting inadvertent error by the Sergeant or to suggest that the defendant had overstated involvement in the robbery to curry favor with the Sergeant on another matter. Hopkins Aff. ¶ 14. Defense counsel further believed it would have been ill advised to cross-examine the Sergeant regarding the prior investigation because of the real potential for opening the door regarding the defendant's alleged involvement in a prior murder and any evidence developed in that matter. Hopkins Aff. 14. United States v. Hon, 17 F.3d 21, 27 (2d Cir. 1994) (holding that counsel's

10

decision not to question a witness about a given subject on cross examination was not ineffective assistance when the counsel was seeking to avoid further damaging testimony from the witness). Nersesian, 824 F.3d at 1321 (holding counsel's decision not to cross-examine was reasonable where cross-examination would likely have uncovered little new information and might have been counter-productive). Defense counsel's reasoning makes perfect sense and was well within the Strickland requirement of reasonable representation.

Second, the defendant, having now reviewed the trial record in detail, picks out certain inconsistencies and argues that defense counsel should have focused on them. However, a review of the attached cross-examination of Gay and Anderson, as well as defense counsel's closing, makes clear that defense counsel undertook a thorough and detailed attack of the two cooperators. In fact, the details raised by the defendant now would have added nothing to the picture counsel presented.

For example, whether Gay or the teller (who saw the gun at best for an instant) differed on the color of the gun, did not change the undisputed fact that Gay participated in the robbery of the bank and her plain and unequivocal recollection that the defendant robbed the bank with her, which was consistent with the recollection of the second coconspirator to the robbery, Jared Anderson. The defendant also takes issue with the testimony of Phillips, a witness standing outside the bank, regarding her recollection of the height of the two bank robbers she saw through the bank's window. Of course, the defendant does not mention the testimony of the bank teller, who was herself quite tall, had been dragged into the bank, and held at gunpoint. That teller, held by the taller robber from behind, looked back and up at the robber and determined him to be approximately 6'3" or 6'4" (Moriarty's height); she also concluded that the

11

other robber was female with long hair (namely, Kelly Gay). GA 46, 48. Moreover, because noone appears to dispute that Gay was the shorter of the two robbers in the bank, Phillips' testimony simply corroborates the point that the second robber (Moriarty) was tall, well over 6 feet.[2] The defendant ultimately is the only individual of the cast of characters living at the beach house who fits the height and general physical description of that robber in the bank. As defense counsel observes, in his discussions with his client the defendant did not posit anyone else who could have met the physical description of that robber. Hopkins Aff. ¶ 12. It is hardly remarkable that Hopkins did not what to spend much time focusing the jury on Phillips testimony.[3]

Third, the defendant criticizes the arguments that Hopkins did not make a bigger deal about the time between Gay's first interview and FBI contact with Anderson, suggesting that such delay gave Gay the time to conspire with Anderson in order to wrongly implicate the defendant. But Hopkins throughout his handling of the trial repeatedly hammered the close relationship between Gay and Anderson and in closing strongly argued various theories to try to

---

[2]   Whether Gay was 6' tall standing straight or 5'10" slouching or the second robber was 6'4 or even 6'5 with work boots, the point is that the second robber was tall and taller than the first (female) robber.

[3]   The defendant also takes issue with the evidence at trial that he had a credit card balance of $5000, suggesting that he always was in debt and thus had no particular urgency to rob a bank. The defendant, however, does not appear to dispute as a general matter that significant debt can be a motive to rob, particularly when combined with his acknowledged depressed state resulting from his divorce. Further, though not introduced at trial, information provided to defense counsel prior to trial suggested that the defendant had been involved in a number of other thefts or robberies, including a possible home invasion, suggesting that his need for cash in the past had influenced his behavior.

explain away the testimony. GA 288-289; GA 309.[4] The fact remains that, in zealously representing his client, Hopkins made a concerted effort to attack the credibility of the two cooperators and suggested that the two may have fabricated their story. See generally cross-examination of Gay and Anderson (attached); Hopkins closing, GA 288 et seq.[5] The jury, seeing the two testify and considering their demeanor and their story, ultimately found them credible.

All of the second guessing by the defendant in his petition does not change that defense counsel made reasonable judgments before and during trial. The defendant has not raised a colorable claim to establish one, much less both, of the Strickland prongs to establish ineffective assistance of counsel, and, as a result, his claim must fail.

---

[4] The problem the defendant inevitably faces is that, if Gay or Anderson were trying to protect each other by fabricating a tale, why would Gay recall events that implicate not only the defendant, but also herself, Scott and Kip Ferrari, and Anderson, when only two robbers were in the bank. Moreover, why would Anderson admit his own and others involvement without immunity protection and also implicate, at one point or another, the entire group. Finally, neither Anderson or Gay appeared to have had a bad relationship with the defendant. The defendant by his own admission called Anderson a "good kid" (attached), and got Gay a heroin fix on the day of the robbery when she was suffering withdrawals, presumably to get her in a better state to commit the robbery. GA 243.

[5] The government had provided defense counsel with information that state authorities were unable, years later, to find the gun, which Gay indicated had been thrown into the Sound near the beach house where the defendant was living. Given that the government was prepared to introduce testimony of the difficulty of recovering a firearm from the Sound after years of storms and tides, focusing the jury on the gun would hardly have helped the defendant's case. Further, these details again do not change the fact that there is no dispute that Gay was in the bank committing the robbery. The key to her testimony was not a recollection of a minor detail, but simply that the defendant was the individual in the bank with her during the robbery.

13

## Conclusion

For the foregoing reasons, this petition for relief under 28 U.S.C. § 2255 should be dismissed. Furthermore, because the defendant has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (2000), no certificate of appealability should be issued.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No.: ct14806
157 Church Street, 23rd Floor
New Haven, CT 06510
Tel.: (203) 821-3754
Fax: (203) 773-5377
Christopher.schmeisser@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing was sent, postage prepaid, by U.S. mail this the 4th day of October, 2005 to:

Michael Moriarty
Reg. # 14634-014
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954-0759

_____
Christopher W. Schmeisser